UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ELISEO CHAVEZ** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 4:19-CV-3138** |
| | § | |
| **LIBERTY INSURANCE** | § | |
| **CORPORATION** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Eliseo Chavez (hereinafter called "Plaintiff") complains of and about Defendant Liberty Insurance Corporation (hereinafter called "Defendant"), and for cause of action shows unto the Court the following:

## PARTIES

1.      Eliseo Chavez is an individual who is a citizen of Texas.

2.      Defendant Liberty Insurance Corporation (sometimes referred to herein as "Liberty") is an unincorporated insurance association whose underwriters are all citizens of states other than Texas.

## JURISDICTION

3.      Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

## VENUE

4.      Venue is also proper in this judicial district and division pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff's insured real property made the basis of this suit is situated in this

district and division, and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and division.

## FACTS

5.      Plaintiff is the owner of a Texas Commercial Property Owner's Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Liberty.

6.      Liberty Insurance Corporation is in the business of providing insurance in the State of Texas. The insurance done by Liberty in Texas includes, but is not limited to the following:

     a.  The making and issuing of contracts of insurance with the Plaintiff;

     b.  The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

     c.  The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff;

     d.  The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff;

     e.  The adjusting and inspection of Plaintiff's insurance claims;

     f.  Making insurance coverage decisions;

     g.  Taking part in making insurance coverage decisions; and

     h.  Making representations to Plaintiff as being an agent for an insurance company with authority to make coverage decisions.

7.      Plaintiff owns the insured property, which is specifically located at 11127 Pembridge Drive, Houston, Texas 77071, in Harris County (hereinafter referred to as "the Property").

8.      On or about May 26, 2018, a storm struck Harris County, Texas, causing damages to homes and businesses throughout the area, including Plaintiff's property ("the Storm"). Specifically, Plaintiff's roof sustained extensive damage during the Storm. Plaintiff's property also sustained damages to the architectural finishes of the property. After the Storm and in compliance with the Policy, Plaintiff filed a claim with Liberty for the damages to his property caused by the Storm.

9.      Plaintiff submitted a claim to Liberty against the Policy for roof damage and exterior damage caused by the Storm. Plaintiff asked that Defendant cover the costs of repairs to the property pursuant to the Policy.

10.     On or about January 15, 2019, Plaintiff sent Defendant a demand letter for damages to his home, in the amount of $91,154.94, which included interest and attorney's fees. Of that amount, $88,328.87 represent the economic damages found by the estimator on behalf of Plaintiff.

11.     After submitting the claim, Defendant assigned an adjuster to evaluate damages to the Property. At the start of the process, Defendant's adjuster told Plaintiff that the damage to his property would be fully covered and that Plaintiff had nothing to worry about. Defendant's adjuster knew this was a false statement when made because, prior to inspecting the home, adjuster knew that Defendant would not pay any amount for the covered damage. Defendant trains its adjusters to ignore covered damage and/or (depending on the circumstances) to calculate damages so that the total estimated cost of repairs is below a policyholder's deductible. Thus, Defendant's

adjuster's statement that Plaintiff's damage to his property would be fully covered was false when made, completely aware that it was false.

12.     The adjuster assigned by Defendant failed to reasonably perform an investigation into the damages sustained by the Plaintiff. Specifically, the adjuster spent less than one hour in assessing damages to each property and then determined there was no storm damage to Plaintiff's property, and no payment was issued. Much more time would have been needed to conduct an adequate inspection due to the size of Plaintiff's property and the extent of the damages Plaintiff identified. Much more time would have been needed to conduct an adequate inspection due to the size of Plaintiff's home and the extent of the damage Plaintiff identified. Plaintiff identified 5 areas in his home with damage caused by storm-created openings, which is damage covered by his homeowner's insurance policy. Those areas include the roof, the exterior, the living room, the bar, and the garage, including a sub-room. The roof has damaged and torn shingles resulting from the water damage due to storm-created openings, which is damaged covered by Plaintiff's homeowner's policy. Similarly, Plaintiff identified covered damage to the exterior, specifically stains, damage to the aluminum gutter, peeled paint, deteriorated wood, and resulting cracks in the walls due to storm-created openings, which is damaged covered by Plaintiff's homeowner's policy. Plaintiff also identified damage in the form of water stains on the ceiling and walls of the interior living room and bar area. Additionally, the garage sustained substantial damage to the ceiling, with large water stains and extensive peeling of paint, which is damaged covered by Plaintiff's homeowner's policy. In sum, Defendant's adjuster ignored all of these aforementioned areas by refusing to conduct an adequate inspection. Defendant's adjuster further failed to inspect these areas because Defendant trains its adjusters to conduct outcome-oriented inspections and in an expeditious fashion.

4

13.     Plaintiff clearly identified damage on the roof, which itself is 45 square feet. The inspection was done in an outcome-oriented way and in an expeditious fashion, as well. The size of the roof would have necessitated over one and a half hours to do a proper and thorough inspection.  Defendant's adjuster spent less than 30 minutes inspecting the roof and ignored several affected areas due to the storm winds, which are damages covered by Plaintiff's homeowner's policy.

14.     As a result of Defendant's unreasonable investigation, Plaintiff's claim was improperly adjusted. Defendant's calculation of the covered damage was significantly deficient, as Defendant purposefully ignored areas with covered damage. Because Defendant's adjuster failed to properly inspect and account for the covered losses, Defendant made no payment at all to Plaintiff for the extensive damage to his property. In fact, Defendant trains adjusters to calculate just enough damage or no damage at all so that the total amount of replacement cost value will be less than a policy holder's deductible, regardless of the actual damage present in the home. Such a policy allows Defendant to mandate that policyholders make repairs to their home out of their own pockets, thereby releasing Defendant of its obligation to make any payment to the policyholder for those repairs.

15.     A subsequent estimate of the covered damages, as described earlier, revealed that the estimated repairs for Plaintiff's home were over $88,000.00, well above Plaintiff's deductible. The difference in repair estimates is due directly to Defendant purposefully overlooking covered damage to the roof, the exterior, the living room, the bar, and the garage, including a sub-room.

16.     As a result of Defendant's conduct, Plaintiff did not receive the payment he was entitled to under the Policy for his Storm damages and losses. As previously stated, when Plaintiff originally purchased the Policy issued by Liberty, Liberty's agent represented on behalf of Liberty

that it would always conduct a fair and unbiased investigation of Plaintiff's claims against the Policy and promptly issue payment to Plaintiff for all properly covered hail storm and windstorm damages to the Property. Liberty's agent knew this statement was false at the time it was made. Liberty's agent knew that Liberty conducted outcome-oriented investigations and purposefully calculated damage estimates below a policyholder's deductible, all to ensure that Defendant would not have to pay policyholders for covered damage. Similarly, Defendant also evades responsibility for covered losses by attributing damages to "exclusions" enumerated within that same policy. At no time did Liberty or any of its agents disclose to the Plaintiff that, in fact, it would conduct an unreasonable, unfair, and/or unbiased investigation of the claims that Plaintiff submitted against the Policy for hail storm and/or windstorm damages to the Property and thereby deny Plaintiff's claim for properly covered hail storm and/or windstorm damages to the Property. The failure to disclose this truth was a material omission by Liberty's agent. As such, Plaintiff reasonably relied on Liberty's misrepresentations and omissions upon purchasing his initial insurance policy, and but for Liberty's misrepresentations and omissions, Plaintiff would not have purchased the Policy issued by Liberty and would have purchased an insurance policy from a different insurer to adequately insure the Property against hailstorm and/or windstorm losses.

17. As indicated in the paragraphs above and below, Liberty wrongfully adjusted Plaintiff's claim for damages suffered during the Storm, even though the Policy expressly provided for those losses. Defendant knew that it had conducted an outcome-oriented investigation and had purposefully ignored covered damage, all the time knowing that it was wrongfully refusing to pay for covered damages. Every day that passes without payment to Plaintiff for the covered damage is another day in which Defendant is purposefully delaying payment because it knows that Plaintiff has more covered damages than were initially estimated.

18.     Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant, through its various agents, wrongfully denied Plaintiff's claim for covered damages, even though all conditions precedent to recovery upon the Policy had been carried out by the Plaintiff. Liberty's conduct constitutes breach of the insurance contract between Liberty and Plaintiff.

19.     Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner when its adjuster failed to perform a reasonable investigation into Plaintiff's damages. Specifically, the adjuster spent less than one hour in assessing damages and then determined that the damages were not covered by the policy. All this occurred despite Defendant's actual awareness of its liability to the Plaintiff under the Policy. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(2)(A).

20.     Defendant refused to fully compensate the Plaintiff under the terms of the Policy for covered losses. Specifically, Defendant performed an outcome-oriented investigation of Plaintiff's claim, purposefully ignored covered damage, and purposefully denied Plaintiff's claim on the property, all of which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(7).

21.     When Plaintiff first purchased the Policy from Defendant through its agent, Defendant misrepresented to Plaintiff that under the Policy, Plaintiff would be entitled to payment from Liberty for damages caused by a covered loss, including hail storm and/or windstorm losses, and that it would conduct an unbiased and reasonable investigation of any claim Plaintiff timely submitted against the Policy. This was a misrepresentation because the agent knew that Defendant would not pay for such damages, as described above. If Plaintiff had known that Liberty was not

going to pay for hail storm and/or windstorm damages that were covered under the Policy, Plaintiff would not have purchased the Policy from Liberty, and instead would have purchased a different insurance policy insuring his home from a different insurer. Defendant made material misrepresentations as to coverage under the Policy upon Plaintiff purchasing of the Policy that in fact misled Plaintiff, including untrue statements of material facts and wrongfully concealed material facts necessary to make Liberty's other representations also misleading, upon which Plaintiff reasonably relied to his detriment. Liberty's conduct constitutes a violation of the Texas Insurance Code, Misrepresentation of Insurance Policies. Tex. Ins. Code §§541.061(1), (2), (3), and (5) as well as violations of Texas Deceptive Trade Practices Act("DTPA"), Tex. Bus. & Comm. Code §§17.41-.63.

22.     Defendant Liberty failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay by dragging the process of obtaining a decision through months of bitter dispute, when Defendant already knows that Plaintiff is indeed entitled to coverage under the terms of the policy. Specifically, Defendant has delayed any payment for Plaintiff's claim. Liberty's conduct constitutes a violation of Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code§ 542.058.

23.     From and after the time Plaintiff's claim was presented to Defendant, the liability of Liberty to pay the claim in accordance with the Policy has been reasonably clear. However, Liberty has refused to pay Plaintiff for the claim, despite there being no basis whatsoever on which a reasonable insurance company would have relied upon to deny full payment. Defendant's conduct additionally constitutes a breach of the common law duty of good faith and fair dealing.

24.     Defendant knowingly and recklessly made false representations, as described above, regarding the material facts and/or knowingly concealed all or part of material information from the Plaintiff.

25.     As a result of Defendant's conduct, Plaintiff was forced to retain the professional services of an attorney and law firm to represent him with respect to these causes of action.

## CAUSES OF ACTION

26.     Plaintiff is not making any claims for relief under federal law.

27.     Defendant Liberty is liable to Plaintiff for intentional breach of contract, DTPA violations, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

28.     Defendant Liberty's conduct constitutes a breach of the insurance contract made between Liberty and Plaintiff.

29.     Defendant's failure and/or refusal to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant's insurance contract with the Plaintiff.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES/PROMPT PAYMENT

30.     Defendant Liberty's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §§ 541.060(a), 541.061. All violations under this article are made actionable by Tex. Ins. Code § 541.151.

31.     Defendant's unfair settlement practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitute an unfair method of competition

and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(a)(1).

32.     Defendant Liberty's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of this claim, even though its liability under the Policy was reasonably clear, constitute an unfair method of competition and un unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(2)(A).

33.     Defendant Liberty's unfair settlement practices, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of the claim, constitute an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(3).

34.     Defendant Liberty's unfair settlement practices, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitute an unfair method of competition and unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(7).

35.     Defendant Liberty's unfair or deceptive acts and/or practices of misrepresenting the Policy, as described above and otherwise herein, by: (1) making untrue statements of material fact, (2) failing to state material facts necessary to make other statements it made not misleading, (3) making a statement(s) in a manner that would mislead a reasonably prudent person to a false conclusion of material fact, and which in fact misled Plaintiff to false conclusions of material fact regarding coverage under the Policy, and/or (4) failing to make a disclosure as required by law and/or in accordance with another provision of the Insurance Code, constitute an unfair method of

competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.061.

36.     Defendant Liberty's delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, constitutes a non-prompt payment of this claim. Tex. Ins. Code § 542.058.

## DTPA VIOLATIONS

37.     Defendant Liberty's conduct amounts to multiple violations of the DTPA Tex. Bus. & Comm. Code §§17.41-.63.  Plaintiff is an "individual" who sought or acquired goods or services by purchase or lease from Defendant, and therefore qualifies as a consumer under the DTPA. Tex. Bus. & Comm. Code §17.54(4). Plaintiff has met all the conditions precedent to bringing this cause of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

    a.     Defendant's actions, as described in this petition, are unconscionable in that Defendant's actions took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff a right to relief under section17.50(a)(3) of the DTPA.

    b.     Defendant's conduct, acts, omissions, and failures, and described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

38.     The above-described acts, omissions, and failures of the Defendant are a producing cause of Plaintiff's damages as described in this petition. The above-described acts, omissions, and failures of the Defendant were committed "knowingly" and "intentionally," as those terms are defined by the Texas Deceptive Trade Practices Act.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

39.     Defendant Liberty's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

40.     Defendant Liberty's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## KNOWLEDGE

41.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

42.     Plaintiff would show that the aforementioned acts, taken together or singularly, constitute the producing cause of the damages sustained by the Plaintiff.

43.     These damages are a direct result of Defendant's mishandling of Plaintiff's claim, in direct violation of the laws, as set forth above.

44.     For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claim, together with attorney's fees.

45.     For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times his actual damages. Tex. Ins. Code § 541.152.

46.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claim, as well as ten (10) percent interest per annum on the amount of such damages claimed, together with attorney's fees.

47.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

48.     For the prosecution of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

49.     Plaintiff would further show that the acts and omissions of Defendant and its agents, adjusters, employees and/or representatives complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendant at the expense of Plaintiff. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff requests exemplary damages pursuant to 17.50(b)(1) of the Texas Business and Commerce Code and § 541.152(b) of the Tex. Ins. Code.

## JURY DEMAND

50.     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, that all causes of action herein be tried before a jury consisting of citizens residing in Harris County, Texas.

## CONCLUSION AND PRAYER

51.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff has and recovers such sums as would reasonably and justly compensate him in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on his behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which he may show himself justly entitled.

Dated: August 21, 2019

Respectfully submitted,

/s Omar Ochoa

Omar Ochoa
*Attorney-in-Charge*
S.D. Tex. Bar No. 2081960
121 N. 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
oochoa@omarochoalaw.com

/s Victor Rodriguez

Victor Rodriguez
*Of Counsel*
S.D. Tex. Bar No. 562260
**VICTOR RODRIGUEZ LAW FIRM PC**
121 N. 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
victor@vrodriguezlaw.com